UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARICE BREEDING                                             CIVIL ACTION

VERSUS                                                      NO. 14-948

U.S. DEPARTMENT OF INTERIOR                                 SECTION I

## ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, the U.S. Department of Interior, pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure to dismiss certain of plaintiff's claims in this employment discrimination case. Plaintiff, Darice Breeding, has filed a response and supplements,[2] to which defendant has filed a reply.[3] For the following reasons, defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff is employed by the Department of Interior, Bureau of Ocean Energy Management ("BOEM").[4] She contacted the Equal Employment Office ("EEO") on August 8, 2012, and after unsuccessful counseling, filed a formal complaint of discrimination on October 31, 2012.[5] The EEO accepted for investigation the following claims:

> Whether you were discriminated against based on sex (female), age 58 . . . , physical disability (facial paralysis, asthma, and autoimmune disorder), and reprisal (previous EEO activity) when:

---

[1] R. Doc. No. 9
[2] R. Doc. Nos. 12, 20, 23.
[3] R. Doc. No. 28.
[4] R. Doc. No. 1, at 2. The court draws these facts from the pleadings and the undisputed summary judgment evidence submitted by the parties.
[5] R. Doc. No. 9-3, at 1.

1

> (1) From February 2012 through the present (defined as the completion of the investigation), you were subjected to a hostile work environment (e.g., management made inappropriate comments during your job interview; you were forced to request that the staff standing outside the interview room be asked to leave prior to your job interview; three days after your job interview, you were asked to "act" in the position that you interviewed for; management revealed to staff members that only one person from BOEM made the best qualified list, resulting in everyone trying to guess who it was, causing a circus-like environment; management implemented a Strategic Plan that you developed and presented to them in your job interview even though it was only meant to be implemented if you were selected; you were interviewed by a selecting official that you believe was a conflict of interest for him to participate in the selection process; and you were forced to move to another cubicle with short notice despite your physical disabilities).
> (2) From July 10-17, 2012, you were not provided a fair opportunity to apply for two noncompetitive GS-0028-13, Supervisory Environmental Protection Specialist positions, advertised under Notice of Interest No. 11-12.
> (3) On August 24, 2012, you were informed that you were not selected for a Supervisory, Interdisciplinary Position . . . that you applied for . . . , for which you made the best qualified lists and were interviewed.[6]

Plaintiff filed this lawsuit after the EEO took no final action on her complaint.[7] She alleges sex discrimination in violation of Title VII, disability discrimination in violation of the Rehabilitation Act, and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").[8] In her complaint, plaintiff reiterates the EEO's statement of the issues and elaborates on her factual allegations, including: (1) that she was not selected for a supervisory interdisciplinary position and instead the job went to a less-qualified, younger, non-disabled male applicant;[9] (2) that she was not "afford[ed] a fair opportunity to apply" for two supervisory environmental protection specialist positions and was "treated disparately and disparately impacted

---

[6] This statement is compiled from the initial EEO letter, an amendment of the second allegation in response to plaintiff's comments, and a subsequent correction. *See* R. Doc. No. 9-3, at 1-2; R. Doc. 9-5, at 1; R. Doc. 9-6, at 1.
[7] R. Doc. No. 1, at 2.
[8] R. Doc. No. 1, at 5-7.
[9] R. Doc. No. 1, at 4.

. . . as a result of the selection process used,"[10] (3) that she was subject to a hostile work environment "due to her membership in the same protected categories,"[11] and (4) that she "previously engaged in protected activity and opposed unlawful discrimination, of which the agency was aware at all pertinent times, and [she] was contemporaneously and subsequently adversely affected by the agency's harassment and non-selection."[12] Plaintiff seeks "compensatory, punitive, liquidated, exemplary, general, legal, equitable, and nominal damages," as well as "injunctive and declaratory relief under all relevant statutes," and attorneys' fees and costs.[13]

Defendant now moves to dismiss or for summary judgment on certain claims. Specifically, defendant moves to dismiss (1) plaintiff's disparate-impact discrimination claim for failure to exhaust administrative remedies as to that claim, (2) plaintiff's Title VII retaliation claim for failure to allege the causal link element of a prima facie case, and (3) plaintiff's claims for compensatory damages as unavailable pursuant to the ADEA, and her claims for punitive damages as unavailable pursuant to any statute.[14]

## STANDARDS OF LAW

**A.     Rule 12(b)(1)**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action where the court finds that it does not have subject matter jurisdiction.[15] Where "a Rule 12(b)(1)

---

[10]R. Doc. No. 1, at 4.
[11]R. Doc. No. 1, at 4.
[12]R. Doc. No. 1, at 5.
[13]R. Doc. No. 1, at 7-8.
[14]R. Doc. No. 9.
[15]This Court lacks jurisdiction over Title VII claims as to which a party has failed to exhaust administrative remedies. *See Filer v. Donley*, 690 F.3d 643, 647-48 (5th Cir. 2012); *see also Watson v. Clear Channel Broadcasting*, No. 13-5503, 2014 WL 258999, at *3 (E.D. La. Jan. 22, 2014) (Africk, J.) (same). Accordingly, defendant's motion to dismiss the disparate-impact claim is a

3

motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (holding that where there are grounds for dismissal under Rule 12(b)(1) for lack of jurisdiction and under Rule 12(b)(6) for failure to state a claim on which relief can be granted, the "court should dismiss only on the jurisdictional ground . . . without reaching the question of failure to state a claim"). This approach "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161. Where dismissal under Rule 12(b)(1) is appropriate, the plaintiff is not precluded from seeking relief in another forum with proper jurisdiction because no determination on the merits has been made. *See Hitt*, 561 F.2d at 608.

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Where, as here, the defendant has attacked the court's subject matter jurisdiction, the plaintiff has the burden of "proving by a preponderance of the evidence that the trial court does" possess the requisite

---

12(b)(1) motion. To the extent that there is any uncertainty regarding whether exhaustion is a jurisdictional requirement or merely a prerequisite to filing a lawsuit, that uncertainty has no effect in this case because there are no issues of waiver or estoppel, *see Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006), and the Court would reach the same conclusion pursuant to Rule 56.

jurisdiction. *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

**B.    Rule 12(b)(6)**

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief.[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the U.S. Court of Appeals for the Fifth Circuit explained in *Gonzalez v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the Twombly standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.

---

[16]Defendant's argument that, as a matter of law, compensatory damages are unavailable pursuant to the ADEA and punitive damages are unavailable pursuant to any applicable statute, is a Rule 12(b)(6) motion.

5

1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

**C.  Rule 56**

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56.[17] "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury

---

[17]Defendant has submitted materials outside the pleadings to establish the dates of plaintiff's EEO activity. Accordingly, that portion of defendant's motion seeking to dismiss plaintiff's retaliation claim will be considered pursuant to Rule 56.

6

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## ANALYSIS

**A.     Exhaustion of Disparate-Impact Claim**

Defendant moves to dismiss plaintiff's disparate-impact discrimination claim for failure to exhaust her administrative remedies as to that claim.[18] "Disparate-impact discrimination . . . addresses employment practices or policies that are facially neutral in their treatment of [Title VII] protected groups, but, in fact, have a disproportionately adverse effect on such a protected group." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). Disparate-*treatment* discrimination, on the other hand, "addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin." *Id.* Disparate-treatment cases require "proof and finding of discriminatory motive," while disparate-impact cases do not. *See id.*

Before filing any Title VII claim, including a disparate-impact claim, "complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency." *Id.* at 788. Deciding whether a claim has been exhausted is influenced by "two competing Title VII policies." *Id.* at 788. The plaintiff's charge should be read liberally because "most complaints are initiated pro se," but not too liberally because "a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an]

---

[18]R. Doc. No. 9-1, at 5-7.

7

attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* at 788-89. In order to strike a balance between these interests, the Fifth Circuit "interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Therefore, the Court engages "in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label." *Id.*

In *Pacheco v. Mineta*, the Fifth Circuit examined "what facts in an administrative charge might be reasonably expected to trigger an EEO disparate-impact investigation." 448 F.3d at 789-90. The "cornerstone of any EEO disparate-impact investigation" is a neutral employment policy, so a complaint which does not identify a policy is unlikely to give rise to such an investigation. *See id.* at 792. Likewise, a disparate-*impact* investigation is unlikely to grow out of a complaint which mentions only "examples of disparate-*treatment* discrimination." *See id.* Thus, in *Pacheco*, the Fifth Circuit concluded that "a disparate-impact investigation could not reasonably have been expected to grow out of Pacheco's administrative charge because of the following matters taken together: (1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it complained of past incidents of disparate treatment only." *Id.* at 792.

Applying these principles to the present matter, the Court first must identify the nature of the disparate-impact claim plaintiff contends she exhausted before the EEO. Her complaint in this case is vague and alleges only that plaintiff "was treated disparately and disparately impacted when not provided a fair opportunity to compete for two non-competitive . . . positions, advertised [under]

8

Notice of Interest No. 11-12."[19] In her opposition to summary judgment, plaintiff elaborates that "[t]he use of a Notice[] of Interest to noncompetitively fill supervisory positions . . . allows discriminatory decisions which negatively affect females and others applying for jobs as it allows the selecting official to base a selection on conditions other than experience and merit as the selecting official is given no objective information to base his decisions and instead bases it upon subjective information that he has obtained during limited information and interactions with limited staff."[20] Plaintiff's theory appears to be that her employer's use of "notices of interest,"[21] as compared to some other hiring method, is facially neutral, but such practice has a disparate impact on women.

Next, the Court must decide whether a "disparate-impact investigation [into this claim] could reasonably have been expected to grow out of" plaintiff's administrative complaint. *Pacheco*, 448 F.3d at 789 (internal quotation marks omitted).[22] The Court agrees with defendant that plaintiff

---

[19]R. Doc. No. 1, at 3; R. Doc. No. 12, at 3 (emphasis omitted).
[20]R. Doc. No. 12, at 6.
[21]The parties have not provided any helpful information regarding what a notice of interest is or how it differs in practice from any other method of advertising a position. As best the Court can glean, a "notice of interest" for a position results in a shorter application period with less documentation than other methods. *See* R. Doc. No. 12, at 6.
[22]The Court may decide Rule 12(b)(1) motions to dismiss for lack of jurisdiction based on "the complaint supplemented by undisputed facts evidenced in the record." *E.g.*, *Ramming*, 281 F.3d at 161. Courts routinely examine the administrative record to decide whether a Title VII plaintiff exhausted administrative remedies as to a given claim. *E.g.*, *Filer*, 690 F.3d at 647 (explaining that only "[t]he noose incident is a properly exhausted, actionable claim" because the plaintiff "identified only the noose incident in his EEOC complaints"); *Pacheco*, 448 F.3d at 791 ("Pacheco's administrative charge . . . lists three incidents of discrimination . . . .").

    The records submitted by defendant are undisputed insofar as Plaintiff does not dispute that they accurately reflect the charges accepted by the EEO and her commentary on those charges. Accordingly, the Court finds it appropriate to examine these records in deciding this portion of defendant's motion pursuant to Rule 12(b)(1). In the alternative, if failure to exhaust administrative remedies is not a jurisdictional defect, *see Pacheco*, 448 F.3d at 788 n.7, then the Court would reach the same conclusion pursuant to Rule 56, because there is no genuine dispute of fact that these

presented to the EEO claims focusing solely on disparate *treatment* and, therefore, she did not exhaust her administrative remedies as to a claim for disparate *impact* discrimination. First, plaintiff barely identifies "any neutral employment policy that would form the basis of a disparate-impact claim." *Pacheco*, 448 F.3d at 792. Although notices of interest are referenced in the administrative record, it is purely in a descriptive way to explain how the jobs were advertised before she was denied a "fair opportunity" to apply to them.[23] Nothing about that framing of the issue suggests that plaintiff contended that the notices of interest themselves had any discriminatory impact on a protected group. Second, Plaintiff's response to the EEO's initial characterization of the charge further confirms that she asserted claims of individualized disparate treatment, rather than a disparate impact to a protected group. Facially, her complaint is that the use of notices of interest to advertise these particular positions was inconvenient *to her* based on her personal vacation and work schedule.[24] Accordingly, the tenor of her EEO complaint is solely individual disparate *treatment*, not disparate *impact*. *See Pacheco*, 448 F.3d at 792. Nothing about plaintiff's complaint could reasonably be expected to produce an EEO investigation into whether notices of interest have a disproportionate impact on women in general, or any other disparate-impact claim.

Plaintiff's arguments to the contrary are not persuasive. She notes that she was unrepresented at the time she complained to the EEO,[25] but that is already taken into consideration in the exhaustion test. She makes the conclusory assertion that she "mentioned disparity over 14 times in [her] official complaint,"[26] but this likewise fails because the Court must examine the

---

materials outside the pleadings reflect the claims plaintiff did and did not present to the EEO.
[23]R. Doc. No. 9-3, at 2; R. Doc. 9-5, at 1.
[24]R. Doc. No. 9-4, at 2.
[25]R. Doc. No. 12, at 4.
[26]R. Doc. No. 23, at 3.

10

substance of her administrative complaint, not the label, *see* 448 F.3d at 789, and the substance of plaintiff's administrative complaint is disparate treatment, not disparate impact.

Accordingly, the Court finds that plaintiff did not exhaust her administrative remedies as to any disparate-impact discrimination claims. The Court therefore lacks jurisdiction over her disparate-impact discrimination claim, *see Filer*, 690 F.3d at 648, and grants that portion of defendant's motion pursuant to Rule 12(b)(1).

**B.    Retaliation Claim**

Defendant moves to dismiss plaintiff's retaliation claim.[27] A plaintiff may establish a prima facie retaliation claim by showing: "(1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Ackel v. Nat'l Comm'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).

According to defendant, plaintiff cannot establish the requisite causal link because her only protected activity predating the adverse employment actions alleged in this lawsuit is an EEO complaint filed in 1999.[28] *See, e.g.*, *Bell v. Bank of Am.*, 171 F. App'x 442, 444 (5th Cir. 2006) (holding that a seven-month gap between an EEOC claim and termination was "insufficient in this instance to satisfy the causation element of the prima facie case" of retaliation). Plaintiff responds cursorily that she has alleged "retaliation for 'previous and *current* EEO activity.'"[29] Defendant replies that plaintiff cannot establish a causal link to her most recent EEO activity because plaintiff

---

[27]R. Doc. No. 9-1, at 7-9.
[28]R. Doc. No. 9-1, at 8-9. Because defendant relies on materials outside the pleadings to establish the relevant timeline, the Court analyzes this portion of the motion pursuant to Rule 56 rather than Rule 12(b)(6).
[29]R. Doc. No. 12, at 3 (emphasis in original).

11

filed the formal EEO complaint which led to this lawsuit on October 31, 2012, *after* all of the adverse employment actions she alleges.[30]

The most recent incident of discrimination plaintiff alleges in her complaint is that on August 24, 2012, "she was informed she was not selected for" a position.[31] Defendant is correct that plaintiff did not file a formal EEO complaint until October 31, 2012, after all of the alleged adverse employment actions. But the administrative record submitted by defendant also suggests that plaintiff "contacted the [EEO] office on August 8, 2012, alleging discrimination."[32] "'An informal complaint may constitute protected activity for purposes of retaliation claims.'" *Amanduron v. Am. Airlines*, 416 F. App'x 421, 424 (5th Cir. 2011) (quoting *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009)) (alteration omitted). Plaintiff's August 8, 2012 contact with the EEO predates the August 24, 2012 job rejection. Accordingly, it appears at least possible that some of plaintiff's asserted adverse employment consequences could have been the result of retaliation for her more recent protected activity. Because chronological impossibility is the only basis defendant asserts at this time for dismissing the retaliation claim, the motion is denied with respect to the retaliation claim.

**C.     Available Damages**

Defendant also moves to dismiss plaintiff's claims for punitive damages under Title VII, the Rehabilitation Act, and the ADEA.[33] Punitive damages are not available against government

---

[30]R. Doc. No. 28, at 5; R. Doc. No. 9-3, at 1. Defendant's reply memorandum cites October 1, 2012, as the date of plaintiff's formal complaint, R. Doc. No. 9-3, at 5, but the EEO acceptance letter indicates that her "formal complaint was postmarked October 31, 2012, and deemed timely filed on that date." R. Doc. No. 9-3, at 1.
[31]R. Doc. No. 1, at 3.
[32]R. Doc. No. 9-3, at 1.
[33]R. Doc. No. 9-1, at 10.

agencies pursuant to Title VII, *see Oden v. Oktibbeha County*, 246 F.3d 458, 465-66 (5th Cir. 2001) (citing 42 U.S.C. § 1981a(b)), or the Rehabilitation Act, which incorporates the remedies available pursuant to Title VII, *see* 29 U.S.C. § 794a(a)(1). In addition, both compensatory and punitive damages "are inapplicable to federal employees suing under the ADEA." *Leal v. McHugh*, 731 F.3d 405, 416 n.11 (5th Cir. 2013); *see also Smith v. Berry Co.*, 165 F.3d 390, 396 (5th Cir. 1999) (holding that "punitive damages and damages for mental pain and suffering" are not available in connection with a claim pursuant to the ADEA). Plaintiff did not respond to this portion of defendant's motion and does not articulate any basis for the recovery of punitive damages, or compensatory damages pursuant to the ADEA. Accordingly, this portion of defendant's motion must be granted pursuant to Rule 12(b)(6).

## CONCLUSION

Accordingly, for the foregoing reasons **IT IS ORDERED** that defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion is **GRANTED** with respect to plaintiff's disparate-impact claim, which is **DISMISSED WITHOUT PREJUDICE**, and with respect to her claims for compensatory damages pursuant to the ADEA and for punitive damages, which are **DISMISSED WITH PREJUDICE**. Defendant's motion is **DENIED** in all other respects.

New Orleans, Louisiana, September 29, 2014.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**