UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARICE BREEDING                                         CIVIL ACTION

VERSUS                                                  NO. 14-948

U.S. DEPARTMENT OF INTERIOR                             SECTION I

ORDER AND REASONS

The Court has pending before it an opposed motion[1] for summary judgment filed by defendant, Salley Jewell, the Secretary of the U.S. Department of the Interior. For the following reasons, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

BACKGROUND

Plaintiff works as a physical scientist for the U.S. Department of the Interior, Bureau of Ocean Energy Management.[2] She was 58 years old at the time of the disputed events, and she suffers from facial paralysis, asthma, and psoriasis.[3] This case arises out of various alleged discriminatory and/or retaliatory actions taken against plaintiff during 2012 on the basis of (1) her gender, in violation of Title VII; (2) her disability, in violation of the Rehabilitation Act; and (3) her age, in violation of the Age Discrimination in Employment Act ("ADEA").[4] Because the facts actually

_____

[1] R. Doc. No. 52.
[2] Exh. 34, at 1. Because of "the fragmented status of the summary judgment record," the Court directed plaintiff to submit a single complete physical copy of the affidavits and exhibits intended to be attached to plaintiff's opposition to summary judgment. R. Doc. No. 68. The Court refers to the numbered exhibits as "Exh. ___."
[3] Exh. 34, at 1-2.
[4] R. Doc. No. 1, at 5-7. In a prior order and reasons ruling on a motion to dismiss, the Court dismissed without prejudice plaintiff's disparate-impact discrimination claim and dismissed with prejudice plaintiff's claims for compensatory damages pursuant to the ADEA and for punitive damages pursuant to Title VII, the Rehabilitation Act, and the ADEA. R. Doc. No. 32, at 13.

1

material to defendant's motion for summary judgment are substantially narrower than the sprawling factual record presented by the parties, the Court will summarize the general background of plaintiff's allegations and address the details of the summary judgment record in connection with the specific grounds for defendant's motion.

Plaintiff has four main claims. First, plaintiff contends that she applied for an internal promotion to a supervisory position ("the GS-14 position"), but that she was rejected in favor of Terri Thomas ("Thomas"), a younger non-disabled woman.[5] Second, plaintiff contends that she was denied a fair opportunity to apply for two other positions ("the GS-13 positions") because the application process for those positions partially took place while she was on vacation and while she was occupied packing her office for a move.[6] Third, plaintiff contends that she was subjected to a hostile work environment.[7] Fourth, plaintiff alleges that she was retaliated against by her employer for engaging in activity protected by federal law.[8]

## STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not

---

[5] R. Doc. No. 63, at 3.
[6] R. Doc. No. 63, at 8-11.
[7] R. Doc. No. 63, at 24-25.
[8] R. Doc. No. 63, at 7-8.

produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

The Court observes that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment, especially where, as here, the nonmoving party is well aware of the existence of such evidence." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence already in the record, that creates an issue of fact." *Id.*

Plaintiff's arguments and citations to the record are scattered haphazardly throughout a 25-

page opposition memorandum, a 24-page response to defendant's statement of uncontested facts, a 67-page affidavit, and handwritten annotations on several hundred pages of exhibits. The Court has endeavored to glean plaintiff's factual and legal contentions from her submissions and such substandard filings will not be accepted by the Court in the future.

## ANALYSIS

Defendant moves for summary judgment as to all of plaintiff's claims and the Court addresses each in turn.

### A.    Gender, Age, and Disability Discrimination

Plaintiff alleges that she was discriminated against on the basis of her gender, age, and disability, in connection with (1) defendant's failure to promote her to the GS-14 position and (2) the application process for the GS-13 positions. Because plaintiff relies on circumstantial evidence of discrimination, the *McDonnell Douglas* three-stage burden-shifting framework applies to plaintiff's claims. *See Cardiel v. Apache Corp.*, 559 F. App'x 284, 288 (5th Cir. 2014) (explaining that *McDonnell Douglas* framework applies to Title VII and ADEA discrimination claims); *Cohen v. U. Tex. Health Science Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014) (Rehabilitation Act). As the Fifth Circuit explains,

> Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff . . . .

*Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (Title VII case). Once the burden has shifted back to the plaintiff, the third stage requires different showings pursuant to different statutes; Title VII requires a plaintiff to show "either: (1) that the employer's proffered reason is not true but

is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.* The motivating factor analysis may also apply to plaintiff's Rehabilitation Act claim, *see Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (per curiam), but the "ADEA does not authorize a mixed-motives claim of age discrimination." *Hoffman v. Baylor Health Care Sys.*, No. 14-10258, 2015 WL 64849, at *3 n.12 (5th Cir. 2015) (per curiam).

A Title VII *prima facie* case requires "a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

A Rehabilitation Act *prima facie* case  requires a showing that "(1) [plaintiff] has a disability; (2) she is an individual qualified for the job in question; (3) she worked for a program or activity receiving Federal financial assistance; and (4) an adverse employment decision was made" because of the disability. *McKay v. Johanns*, 265 F. App'x 267, 268-69 (5th Cir. 2008).

An ADEA *prima facie* case of discrimination based on a failure to promote requires a showing that "(1) she belongs to a protected class; (2) she applied for and was qualified for the position she sought; (3) she was not promoted to the position sought, *i.e.*, she suffered an adverse employment action; and (4) her employer promoted someone to the position who was not a member of the protected class." *Ruth v. Owens-Illinois Glass Container, Inc.*, 260 F. App'x 703, 705 (5th Cir. 2007).

1)      **GS-14 Position**

5

With respect to plaintiff's discrimination claims based on the GS-14 position, defendant does not address plaintiff's *prima facie* cases based on gender, age, or disability discrimination and defendant instead jumps to the third step of the burden-shifting framework.[9] According to defendant, summary judgment should be granted because plaintiff cannot show that she was clearly more qualified than Thomas and she cannot, therefore, show that selecting Thomas on the basis of superior qualifications was a pretext for discrimination.[10]

Defendant's motion for summary judgment addresses one way in which plaintiff can establish pretext, but plaintiff is not required to show that she was clearly more qualified than Thomas. *See Julian v. City of Houston*, 314 F.3d 721, 728 (5th Cir. 2002) ("Although pointing to clearly superior qualifications is one permissible way to demonstrate intentional discrimination, a plaintiff is not *required* to make this showing."); *see Sanders v. Anadarko Petroleum Corp.*, 108 F. App'x 139, 143 (5th Cir. 2004) ("If . . . a plaintiff relies on comparative qualifications *alone*, she must present evidence that she is clearly better qualified than those individuals who were hired.") (emphasis added).[11] A plaintiff may establish pretext in a myriad of other ways, including "by

---

[9]Because defendant has not addressed those *prima facie* cases, the Court merely notes that plaintiff could have had, among other things, difficulty establishing a *prima facie* case of gender or age discrimination based on defendant's rejection of her application for the GS-14 position in favor of another woman six years younger than plaintiff.

[10]R. Doc. No. 52-1, at 16-17. Defendant does not expressly address the second stage of the burden-shifting framework and its burden to produce and articulate a legitimate nondiscriminatory reason for hiring Thomas instead of plaintiff. Because "choosing some other candidate because he is the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse employment decision," *Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004), and because plaintiff does not contend that defendant failed at the second stage of the framework, the Court will address only the third stage.

[11]If a plaintiff does rely on comparative qualifications to establish an inference of pretext, then the "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Bright v. GB Bioscience, Inc.*, 305 F. App'x 197, 205 n.8 (5th Cir. 2008); *see*

presenting evidence that the employer's proffered explanation is false or unworthy of credence, because 'it is not the real reason for the adverse employment action.'" *Id.* (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).[12]

According to defendant, Thomas was selected instead of plaintiff because the GS-14 position "needed strong leadership skills more than anything else."[13] According to the affidavit of the individual who made the hiring decision, "[o]n paper *and especially in the interview*, Ms. Thomas impressed [the interviewer] greatly that she was the kind of person who could come into OAS and provide the leadership that was so sorely lacking."[14] Defendant submits a list of questions purportedly asked of all candidates interviewed for the GS-14 position, including the question "How have you handled disciplinary issues with staff?"[15] As for plaintiff, a post-interview "matrix" summarizing the interview results states that plaintiff's "weakness is the lack of full time, permanent supervisory experience indicated by the fact she could not provide examples of how she handled disciplinary problems or managed staff in terms of meeting mission critical elements."[16] As for Thomas, the matrix states that her "strength was her supervisory/managerial experience, diverse

---

*also EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) ("A fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected.").

[12] The parties do not address whether qualifications that are better, but not *clearly* better, may buttress an inference of pretext established by other, non-qualification-based evidence. Because the Court must consider the "totality of the evidence" at the pretext stage, *e.g., Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999), it may be appropriate to attach some weight to that evidence. *Cf. Pratt v. City of Houston*, 247 F.3d 601, 607 (5th Cir. 2001) (concluding that the totality of evidence of pretext, which included allegations of prior discrimination as well as "the *better* resumes of the plaintiffs," created a fact question that precluded summary judgment) (emphasis added).

[13] R. Doc. No. 52-6, at 4.
[14] R. Doc. No. 52-6, at 4 (emphasis added).
[15] R. Doc. No. 52-5, at 3.
[16] R. Doc. No. 52-5, at 4.

regulatory NEPA background and her display of leadership skills."[17]

In response, plaintiff does contend that her qualifications were superior to Thomas's qualifications,[18] but she does not rely solely on evidence of comparative qualifications to show pretext. Plaintiff also attempts to demonstrate irregularities in the interview process suggesting that defendant's professed reliance on Thomas's qualifications as the basis for the employment decision is not worthy of credence. Plaintiff affirms that when she was interviewed for the GS-14 position, she was asked a different set of questions than that submitted by defendant in connection with the motion for summary judgment.[19] In particular, plaintiff states that she was not asked a question relating to addressing disciplinary problems with staff–the specific question for which she was criticized for being unable to answer and which pertained to defendant's purported primary qualification for the position. Plaintiff also asserts a variety of other purported inconsistencies with respect to questions, preservation of notes, and the sequence of interviews which, taken individually, may not be material, but collectively could conceivably be construed as indicating some degree of manipulation of the interview process or a subsequent cover-up.[20] Defendant did not file a reply brief addressing these matters.

Standing alone, defendant is likely correct that plaintiff's evidence of her supposedly superior qualifications would likely not generate a material genuine fact dispute with respect to whether the "disparities in qualifications [were] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the

---

[17]R. Doc. No. 52-5, at 5.
[18]R. Doc. No. 63, at 3; Exh. 34, at 35-39.
[19]Exh. 34, at 23; Exh. 26, at 3-4.
[20]*See* Exh. 34, at 18-27.

plaintiff for the job in question." *Bright*, 305 F. App'x at 205 n.8. But plaintiff is not obligated to show "clearly superior" qualifications at all if she presents other evidence of pretext. *See Julian*, 314 F.3d at 728. Plaintiff submits competent summary judgment evidence which, if accepted by the trier of fact as true, could support an inference that the interview process was manipulated to disadvantage plaintiff and to manufacture a record misrepresenting plaintiff's qualifications as a pretext for rejecting her application for the GS-14 position. Defendant did not address this evidence of pretext. Accordingly, the Court concludes that defendant has failed with respect to its summary judgment burden to establish entitlement to a judgment as a matter of law, and that there appears to be a genuine issue of material fact at the pretext stage of the *McDonnell Douglas* analysis with respect to plaintiff's gender, age, and disability discrimination claims based on the GS-14 position. The motion should be denied as to those claims.

### 2)   GS-13 Positions

With respect to the alleged discrimination based on the two GS-13 position openings, defendant moves for summary judgment on the basis that plaintiff cannot show an adverse employment action required as an element of a *prima facie* case pursuant to Title VII, the ADEA, and the Rehabilitation Act.[21] *See McCoy*, 492 F.3d at 556; *Ruth*, 260 F. App'x at 705; *McKay*, 265 F. App'x at 268-69. The Fifth Circuit has a "strict interpretation of the adverse employment element" of a *prima facie* case of discrimination. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). For the purpose of all three statutes, "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559 (Title VII); *McKay v. Johanns*, 265 F. App'x at 268-69 (Rehabilitation

---

[21]R. Doc. No. 52-1, at 14-16.

Act); *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 320 (ADEA). "[A]n adverse employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Pegram*, 361 F.3d at 282 (internal quotation marks omitted).

Plaintiff frames the defendant's alleged adverse employment action as "the timing and manner of advertisement" for the GS-13 positions; according to plaintiff, the application period for the GS-13 positions took place partially while she was on vacation, partially while she was occupied packing her office, and before she knew if she had received the GS-14 position.[22] Plaintiff believes these circumstances prevented her "from having a fair opportunity to apply for the positions."[23] Even drawing all reasonable inferences in her favor with respect to her *prima facie* case, plaintiff has not demonstrated a genuine issue of material fact as to whether her argument rises to the level of an adverse employment action under these circumstances.

Plaintiff was not denied either of the GS-13 positions because it is undisputed that she did not apply for them.[24] Nor has plaintiff presented evidence suggesting that she was prohibited from applying for the GS-13 positions or that she would have obtained one of the positions had she applied. At most, the timing of the application period for the GS-13 positions was inconvenient to plaintiff because of the circumstances surrounding her return from a vacation, but the record does not reflect that defendant did anything that prohibited plaintiff from applying for those positions. Therefore, defendant's method of advertising the GS-13 positions is a step removed from "affect[ing] plaintiff's] job duties, compensation, or benefits." *See generally Pegram*, 361 F.3d at

---

[22] R. Doc. No. 63, at 10-11; Exh. 34, at 57-59. The record establish that the application period for the GS-13 positions was from July 10, 2012, to July 17, 2012. R. Doc. 52-4, at 2. Plaintiff returned from her vacation on July 16, 2012. Exh. 34, at 57.
[23] R. Doc. No. 63, at 10.
[24] R. Doc. 52-4, at 2.

282 (internal quotation marks omitted).[25]

In light of the Fifth Circuit's "strict interpretation" of the adverse employment action element, the Court concludes that plaintiff has not established that element of her *prima facie* cases. Accordingly, the motion for summary judgment as to plaintiff's claims of gender, age, and disability discrimination with respect to the GS-13 positions should be granted.

**B.    Hostile Work Environment**

Defendant also moves for summary judgment with respect to plaintiff's hostile work environment claims contending that (1) plaintiff cannot establish that the alleged hostile work environment was based on any protected trait and (2) plaintiff's allegations "do not rise to the level of severe or pervasive harassment."[26] In order to establish a hostile work environment claim in violation of Title VII, plaintiff must prove that "(1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). "For harassment on the basis of a protected

---

[25]The only case plaintiff cites in opposition to defendant's motion with respect to this issue, *Alvarado v. Texas Rangers*, 492 F.3d 605 (5th Cir. 2007), is not apposite. In *Alvarado*, the Fifth Circuit held that "denial of a transfer *may* be the objective equivalent of a denial of a promotion, and thus qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other tangible benefits; if the position sought was objectively better, then the failure to award the new position to the plaintiff can constitute an adverse employment action." 492 F.3d at 614 (emphasis in original). But *Alvarado* does not help plaintiff. Assuming that the GS-13 positions were "objectively better," plaintiff was not denied those positions because she did not apply for them and was not prohibited from doing so.

[26]R. Doc. No. 52-1, at 18-19.

characteristic to affect a term, condition, or privilege of employment, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Ramsey*, 286 F.3d at 268). Hostile work environment claims pursuant to the ADEA and the Rehabilitation Act require evidence of a similar degree of severity. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (pursuant to the ADEA, "[a] workplace environment is hostile when it is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment" and is objectively unreasonable and offensive); *Travis v. Potter*, 221 F. App'x 345, 348 (5th Cir. 2007) (Rehabilitation Act).

In her opposition brief, plaintiff does not specifically respond to defendant's arguments, cite any apposite cases, or clearly articulate what conduct she believes gave rise to a hostile work environment. Instead, plaintiff cursorily states that she "satisfies the third prong and refers [the] Court to this subject to UMFs 1, 3, 34, 51, 61, 64, 65, 66, 67, and 68 and Exhibits 1-4, 7, 14, 19, 23, 24, 25, 26, 28, 29, 30, 31, 32, 33, 34, 40, 41, 63, 64, 67, 68, 70[-]74, 76, 83, 84."[27] Plaintiff has not sufficiently briefed this issue and defendant's motion is functionally unopposed with respect to the hostile work environment claims.

Alternatively, the Court has reviewed the specific incidents articulated in defendant's motion and attempted to discern in plaintiff's summary judgment evidence any additional events that could conceivably be construed as generating a genuine issue of material fact as to plaintiff's hostile work environment claim. The Court has identified no facts which, if true, rise to the requisite level of objectively unreasonable "discriminatory intimidation, ridicule, and insult, that is sufficiently

---

[27]R. Doc. No. 63, at 24-25.

pervasive to alter the conditions of the victim's employment." *Dediol*, 655 F.3d at 441. Accordingly, defendant's motion for summary judgment should be granted as to plaintiff's hostile work environment claims.

## C.    Retaliation

Defendant also moves for summary judgment with respect to plaintiff's retaliation claims. Plaintiff's *prima facie* case for retaliation requires her to show: (1) engagement in activity protected by one of the statutes she invokes, (2) subjection to an adverse employment action, and (3) a causal link between the protected activity and the adverse employment action. *See Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (Title VII); *Higbie v. Kerry*, No. 14-10568, 2015 WL 1262499, at *2 (5th Cir. Mar. 20, 2015) (Rehabilitation Act); *Wooten v. McDonald Transit Assocs.*, 775 F.3d 689, 694 (5th Cir. 2015) (ADEA).

Defendant contends that plaintiff cannot present any evidence establishing the requisite causal link between protected activity and a subsequent adverse employment action and defendant focuses on plaintiff's history of Equal Employment Office ("EEO") activity.[28] With respect to plaintiff's prior EEO activity in 1999, defendant contends that conduct is too temporally remote for any causal link to be inferred.[29] With respect to the formal EEO complaint plaintiff filed on October 31, 2012, which led to this lawsuit, defendant points out that causation is chronologically impossible because all of the alleged adverse acts predate that formal complaint.[30] With respect to the fact that plaintiff contacted an EEO counselor on August 8, 2012, before plaintiff was passed over for the GS-14 position, defendant contends that plaintiff has no evidence of a causal link between the two

---

[28]R. Doc. No. 52-1, at 21-22.
[29]R. Doc. No. 52-1, at 21-22.
[30]R. Doc. No. 52-1, at 22.

events.[31] In her opposition, plaintiff does not rely on her participation in EEO activities, but instead articulates a theory of retaliation based on her purported opposition to discriminatory practices.[32]

"Activities protected under Title VII fall into two broad categories–opposition and participation." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998). "An employee has engaged in protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Id.* (citing 42 U.S.C. § 2000e-3(a); *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996)). The ADEA and Rehabilitation Act apply the same definition of protected activity. *See Wooten*, 775 F.3d at 694 (ADEA); *Shannon v. Henderson*, No. 01-10346, 2001 WL 1223633, at *3 (5th Cir. 2001) (Rehabilitation Act) (per curiam).

For conduct to constitute "opposition" to discrimination, a plaintiff must "only show that she had a 'reasonable belief that the employer was engaged in unlawful employment practices.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348-49 (5th Cir. 2007) (quoting *Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2007)). Conversely, if "no reasonable employer would have understood it to be an expression of opposition to unlawful discrimination at work," an employee's purported opposition is not protected activity for the purpose of establishing a *prima facie* case of retaliation. *See Stewart v. RSC Equip. Rental, Inc.*, 485 F. App'x 649, 652 (5th Cir. 2012) (affirming summary judgment as to certain allegations of retaliation because the plaintiff's

---

[31]R. Doc. No. 52-1, at 22-23.
[32]R. Doc. No. 63, at 7-8, 23. Defendant did not address this theory of retaliation, although plaintiff asserted it in her complaint. R. Doc. No. 1, ¶ 17 (alleging that plaintiff "has previously engaged in protected activity and opposed unlawful discrimination").

14

purported opposition to discrimination was "indistinguishable from non-race-based grumbling by an employee" and "had no racial element").

In her affidavit, plaintiff details at length her contemporaneous complaints about the GS-14 selection and interview process.[33] For example, plaintiff refers to an email she sent to a co-worker complaining that "Greg is anointed" for the GS-14 position.[34] Plaintiff also states that she "expressed opposition in my June 12, 2012 email to HR regarding 1) the Agency's disclosure to coworkers that I was the sole internal applicant to make the [best qualified list] for the GS-14 [position] and to 2) the announcement to my coworkers that the position would consequently be re-advertised and 3) the fact that as a result of these disclosures I may not be afforded the ability to have a successful interview."[35]

Plaintiff does not explain how a trier of fact could conclude that these activities are "opposition" protected by Title VII, the ADEA, or the Rehabilitation Act. She does not articulate how her complaints implicated her protected status or how a "reasonable employer would have understood [them] to be an expression of opposition *to unlawful discrimination* at work." *See Stewart*, 485 F. App'x at 652 (emphasis added). Nor is it readily apparent how plaintiff could reasonably have believed that any particular detail about which she complained "constituted an unlawful employment practice in and of" itself. *See Turner*, 476 F.3d at 349. In short, the Court has reviewed the affidavit and exhibits and concludes that a reasonable trier of fact could only find that plaintiff's complaints are "indistinguishable from non-[protected status] based grumbling by an

---

[33]Exh. 34, at 5-13.
[34]Exh. 34, at 6; Exh. 40, at 1. As explained above, however, the GS-14 position went to Terri Thomas, a fifty-two-year-old woman. Exh. 34, at 2.
[35]Exh. 34, at 7.

employee" and as a matter of law such activity does not constitute protected activity. *See Stewart*, 485 F. App'x at 652. In the absence of a genuine issue of material fact regarding protected activity, plaintiff has not established a *prima facie* case of retaliation and summary judgment as to her retaliation claims should be granted.

### CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** with respect to plaintiff's discrimination claims based on the GS-13 application process, her hostile work environment claims, and her retaliation claims, which claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED** with respect to plaintiff's Title VII, ADEA, and Rehabilitation Act discrimination claims based on the GS-14 position.

New Orleans, Louisiana, April 21, 2015.

**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

16